DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Margaret McEaneney appeals the spousal support award rendered by the Summit County Court of Common Pleas, Domestic Relations Division, in its decree of divorce terminating Margaret's marriage to Dennis McEaneney. Dennis cross-appeals the court's spousal support award.
 I.
Margaret and Dennis were married on November 14, 1979. Margaret was twenty years old at the time of the marriage, and Dennis was thirty-four. They have one child of the marriage, a son born on April 10, 1986. In July 1997, Margaret decided to leave the marital home, and moved in with her mother, because of Dennis' abusive behavior. On March 27, 1998, Dennis filed for divorce, charging Margaret with "abandonment, gross neglect of duty and extreme cruelty." Dennis requested custody of their son and child support from Margaret.
A hearing was held before the trial judge on February 11, 1999. The following was presented by way of testimony and evidence. Dennis has a college degree and worked throughout the marriage as a newspaper reporter. Dennis earns over $50,000 per year, not including bonuses or overtime of up to almost $3,500 per year. Margaret does not have any education beyond high school, and she did not work at all for the first ten years of the marriage. Dennis encouraged her to be a full-time spouse and mother. One of Margaret's marital duties was to meet Dennis at a bar after work, where the couple consumed from "three to thirteen" drinks on each outing.
Sometime in 1989, at Dennis' urging, Margaret began to tend bar two to three days a week. From 1989 to 1997, Margaret worked at three different bars, working two to three days a week. For the bartending jobs, Margaret received approximately $100 per week plus an unknown amount in tips. The bar owners who formerly employed Margaret testified that her work for them was in the nature of fill-in work, and was only part-time employment. After Margaret left the third bartending job, she worked occasionally helping a friend install drywall. This individual testified that he paid Margaret $10 per hour, but only employed her for about eighty-two hours in 1997. He testified that to do other construction work, she would need extensive training, and that she could never do more than minimal work in the drywall business because of the heavy lifting involved. Margaret also got seasonal work in department stores, which paid minimum wage.
During the marriage, Margaret developed a problem with alcohol. Nonetheless, she continued to tend bar, and did not seek any treatment for her alcoholism. During the pendency of the divorce proceedings, Margaret went for court-ordered vocational evaluation. The vocational counselor noted in his report that Margaret came into the evaluation sessions smelling of alcohol, even for the session that began as early as 9 a.m. The counselor concluded, "I would be very surprised if she was able to get a starting job that paid more than $6-7/hour or $12,480-$14,580 annually." The report went on to say that Margaret would more likely only be able to secure part-time work, unless she received job training. Dennis disagreed with the vocational analysis, saying that Margaret could earn more than $13,000 per year because she was "too bright for that." Dennis testified that he was unwilling to pay for any re-training for Margaret, because the county offers free vocational training. He offered no support for this statement.
During the separation, Dennis gave Margaret a lump sum of $5,000 for her living expenses. Margaret did not seek an interim spousal support award. Dennis filed evidence in support of his earnings, assets, and debts. There is no record before this Court of Margaret's estimated expenses except for her testimony that she anticipated her monthly expenses would be around $900 per month. At the time of the hearing, she was still living with her mother and was not paying rent. At the end of the hearing, Margaret's attorney requested that the court order spousal support of $1,000 per month, with the time and the amount of support subject to further modification by the court. Dennis' attorney requested that no spousal support be ordered, and that the property division, already worked out by both parties, remain intact.
The trial court issued a divorce decree on March 17, 1999. The court awarded custody of their son to Dennis, and ordered Margaret to pay $182.37 per month in child support, based on imputed income of $16,640 per year. Dennis was ordered to pay Margaret spousal support of $800 per month for twelve months, which, with a set-off for the child support, would provide Margaret with $617.63 per month in support. Dennis was also required to pay Margaret's health insurance premiums for as long as his COBRA permitted, up to thirty-six months. Dennis retained the marital residence and a car, which were the primary assets in the marriage, as well as all the marital debts, which essentially resulted in a net negative allocation to Dennis of $11,000. Dennis' pension was divided evenly pursuant to a Qualified Domestic Relations Order. Both parties were ordered to pay their own attorney fees. No money was awarded to Margaret specifically to assist her in re-training for gainful employment.
Margaret filed a timely appeal, asserting as error that the trial court abused its discretion in making a spousal support award without considering the factors listed in R.C.3105.18(C)(1). Dennis filed a cross appeal, assigning as error that the court abused its discretion when it awarded spousal support without equitably considering the marital debt which Dennis assumed.
 II.
Margaret's Assignment of Error:
 The decision of the trial court ought to be reversed due to the error contained therein, to wit:
 The trial court erred in making the spousal support award where it refused to consider O.R.C. Section 3105.18(C)(1).
R.C. 3105.18 sets forth the statutory factors that the trial court must review when "determining whether spousal support is appropriate and reasonable." R.C. 3105.18(C)(1). "Trial courts are required to apply these statutory factors and indicate in the final decree of divorce the underlying basis for the award in sufficient detail to enable an appellate court to determine whether the award was appropriate." Schneider v. Schneider
(1996), 110 Ohio App.3d 487, 494, citing Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 96-97. "If the court does not specifically address each [R.C. 3105.18(C)(1)] factor in [its] order, a reviewing court will presume each factor was considered, absent evidence to the contrary." Schrader v. Schrader (Jan. 21, 1998), Medina App. No. 2664-M, unreported, at 5, citing Cherry v.Cherry (1981), 66 Ohio St.2d 348, 356. These factors are:
 The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.17.1 of the Revised Code;
The relative earning abilities of the parties;
 The ages and the physical, mental, and emotional conditions of the parties;
The retirement benefits of the parties;
The duration of the marriage;
 The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 The standard of living of the parties established during the marriage;
The relative extent of education of the parties;
 The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 The tax consequences, for each party, of an award of spousal support;
 The lost income production capacity of either party that resulted from that party's marital responsibilities;
 Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1).
An award of spousal support is subject to the discretion of the trial court and will not be reversed absent an abuse of discretion. Schneider, 110 Ohio App.3d at 494. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, citing State v. Adams (1980), 62 Ohio St.2d 151,157. Absent an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
Margaret challenges the spousal support award of $800 per month for twelve months. She cites the following factors to justify a longer term award: the length of the marriage during which Margaret was caregiver to the minor child, the disparity between the parties' education and income potential, the improbability that Margaret will become self-supporting in the near future, her corresponding child support obligation, and the fact that Dennis at least contributed to Margaret's problem with alcohol.
The trial court, in its Finding of Facts and Conclusions of Law, stated that it considered all the statutory factors, and it clearly dealt with many of the elements enumerated in R.C.3105.18(C). The court addressed the length of the parties' marriage, the disparity in their income, Margaret's lack of education or vocational training, Margaret's spotty employment history, her alcoholism, and its implication for her employment prospects.
The trial court found that Margaret was "voluntarily underemployed" and attributed an income to her of $320 per week, or $16,640 per year, upon which her child support obligation was imposed. In its Findings of Fact and Conclusions of Law, the court said that "[o]ver the past decade [Margaret] has worked part time in bars and with a drywaller, never working more than 3 days per week and earning wages of $8-10 per hour, together with tips as a bar tender." However, this is not supported by the evidence before the trial court. The drywall installer paid Margaret $10 per hour but he only employed her for a total of eighty-two hours. He acknowledged that her ability to work in drywall was very limited due to the heavy lifting involved, and that she would need further training to do any construction work. Margaret worked "3 days per week" bartending, for which she was paid approximately $100 for thirty-two hours of work, or a rate of approximately $3 per hour, plus an unknown amount in tips.
The imputed income of $16,640 annually would require earnings of $8 per hour, for forty hours a week, for fifty-two weeks per year. Thus, it appears that the imputed income is predicated on full-time employment status, which Margaret has not maintained in twenty years, and on an hourly wage level that she only earned on a very short-term basis. This income exceeds the $12,480-$14,580 annual income which the court-appointed vocational analyst concluded would be a very optimistic expectation. In fact, the analyst concluded that more likely Margaret could only secure part time minimum wage work, which would reduce the imputed income dramatically.
Finally, the court stated that Margaret "has a * * * drinking problem that obviously has created problems for her in terms of * * * self[-]dependency, and employment. She needs counseling, professional assistance, and vocational direction." But the court did not make any finding that Margaret would be able to become self-supporting within twelve months even with the necessary supportive services. The evidence before the court indicated that after twelve months, Margaret would likely earn less than $12,480 to $14,580, from which she would be obligated to pay $2,188.44 annually in child support.
This Court has found a spousal support award to be arbitrary "based on the lack of support in the record for the award made by the trial court[.]" Dilacqua v. Dilacqua (1993), 88 Ohio App.3d 48,60. In Dilacqua, the wife was working on an advanced degree, and the court's spousal support award appeared to be based on her ability to secure a higher income once the degree was attained. However, the court cited no evidence that the wife could achieve work in that field, or what income she would earn doing such work. Because the trial court in the instant case failed to substantiate that Margaret could achieve the level of income imputed to her or that she would be self-supporting within twelve months, we find that the spousal support award was arbitrary.
Furthermore, "at the very least, equity requires that a party receive sufficient sustenance alimony to bring him or her to a reasonable standard of living, comparable to the standard maintained during the marriage." Addy v. Addy (1994), 97 Ohio App.3d 204,208, citing Buckles v. Buckles (1988), 46 Ohio App.3d 102
. Because after twelve months Margaret would be left with a gross income after child support of no more than $12,000, while Dennis would have over $50,000 in gross earnings for the support of two persons, we find that the award is unreasonable.
We find that the trial court abused its discretion in making the spousal support award. Therefore we find that Margaret's assignment of error is well-taken.
 III.
Dennis' Assignment of Error:
 The trial judge's ruling which did not equitably consider the marital debt that the Appellee-Cross Appellant has been allocated constitutes an abuse of discretion.
Dennis asserts that the trial court failed to consider the marital debt which he assumed when it made the spousal support award, in violation of R.C. 3105.18(C)(1). During the trial, Dennis submitted to the court proposed stipulations as to the division of marital property, which Margaret's counsel stated involved Dennis' retention of the marital house and his assumption of "the outstanding marital debts as well as his own." Dennis asked the court to award no spousal support. Now he claims that the trial court did not consider the marital debt when making the spousal support award. We disagree.
It is clear from the trial court's findings of fact and conclusions of law, that the court was aware of Dennis' assumption of the marital debt, the value of the marital residence, and the fact that Dennis gave Margaret $5,000 after the separation. The evidence before the court established that the marital debt was $66,000. Dennis was awarded the marital house, with a value of $55,000 and a $46,000 mortgage, which accounts for most of the marital debt. Essentially, Dennis has a house with no equity, a car with no equity, and an excess marital debt of $11,000. Because Margaret has no assets from the marriage, Dennis is $11,000 worse off than Margaret. Given the disparity between the earning potential of each party, the decision of the trial court to award spousal support despite Dennis' assumption of $11,000 of marital debt over and above the marital assets does not constitute an abuse of discretion.
We overrule Dennis' assignment of error.
 IV.
Because we have found that the spousal support award is unreasonable and arbitrary, the award will be vacated and the cause remanded to the trial court for a determination of the appropriate amount and duration of the spousal support required.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee/Cross-Appellant.
Exceptions.
WILLIAM R. BAIRD, FOR THE COURT
BATCHELDER, J., CONCURS.
SLABY, J., CONCURS IN JUDGMENT ONLY.