DECISION AND JOURNAL ENTRY
Donald J. Prohaska appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, which issued a decree of divorce terminating his marriage to Sally Prohaska. This court affirms.
 I.
Donald and Sally were married on September 2, 1972. They had three children during the marriage, who were 16, 14, and 12 years old when Sally filed for divorce on October 28, 1996. Almost all of the issues that Donald raises on appeal deal with the financial determinations made by the trial court, and our recitation of the facts will focus primarily on these issues.
Sally has two years of college education, and worked as a lab technician at Parma Hospital from 1975 to 1980, and again from 1986 to the present. Donald attended college for four years, but stopped four credit hours short of completing his degree. He worked as a roofer in the family construction business from 1974 to 1991. Throughout the marriage money was tight, and the couple borrowed or received as gifts substantial sums of money from family members to help them make ends meet. In 1991, Donald quit his job, in part to prevent the IRS from attaching his wages. He did not work from 1991 to 1997.
The IRS problems began in the early 1980's, when Donald's brother James introduced Donald to the concept of tax shelters, which greatly reduce federal tax liability. James persuaded Donald, Sally, other family members, and other persons, to invest in two nationally established tax shelters. For Donald and Sally, the initial result was a reduction in their tax liability for 1978, 1979, 1980, 1981 and 1982, due to large claimed investment tax credits. Ultimately, the IRS, the tax court, and the Sixth Circuit disallowed the tax credits claimed by Donald and Sally, and assessed a tax liability of tens of thousands of dollars, which included penalties and interest. A full discussion of these tax matters is contained below.
Sally filed for divorce on October 28, 1996, alleging gross neglect of duty, extreme cruelty, and incompatibility. She sought custody of the three children, child support, spousal support, and an equitable division of the marital property.
The magistrate held two hearings, on May 28 and June 19, 1998, and issued a proposed decision on September 23, 1998. Donald's counsel filed timely objections to the magistrate's decision. After a hearing on the objections, the trial court adopted the magistrate's findings of facts, and issued its order on December 30, 1998. The court gave custody of the two minor children to Sally.[1] Donald was permitted visitation for five hours every other Saturday or Sunday afternoon, if the parties could not agree on a more favorable arrangement. Donald was ordered to pay child support for these two children. Neither spouse was awarded spousal support.
The court awarded to Sally the marital residence, valued at $80,000, and her pension plan worth approximately $10,000. The court made Sally responsible for the following debts: the first and second mortgages on the house, credit card debts, a loan for a new well on the residential property, debts incurred for the children's counseling, and $7,538.62 of the couple's $69,195.47 tax liability. In order to equalize the property division, the court ordered Sally to pay Donald $15,210.63, once Donald paid all but $7,538.62 of the tax liability. To Donald the trial court awarded: a 1986 Chevrolet Suburban, valued at $1,500; a 1985 Dodge Caravan, valued at $3,000; tools valued at $10,000; and two trailers with a total value of $400. Donald was ordered to pay all but $7,538.62 of the tax liability. Donald was ordered to pay $173.09 per child per month in child support. Sally was ordered to pay the medical insurance premiums for the minor children.
Donald filed the instant appeal, assigning the following eight errors.
 II. A. Denial of a Second Continuance I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS ORDERS OF DECEMBER 3 AND 10, 1998, IN NOT PROVIDING THE APPELLANT A MEANINGFUL OPPORTUNITY TO FILE AMENDED OBJECTIONS TO THE MAGISTRATE'S DECISION, WHICH ALSO DENIED THE APPELLANT HIS [STATE] AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND ACCESS TO THE COURTS.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DECEMBER 18, 1998 ORDER ADOPTING THE MAGISTRATE'S FINDINGS OF FACT WITHOUT PROVIDING THE APPELLANT A MEANINGFUL OPPORTUNITY TO FILE AMENDED OBJECTIONS TO THE MAGISTRATE'S DECISION.
Donald asserts that the trial court erred when it granted him a limited time in which to file amended objections to the magistrate's decision after he had secured new counsel. He argues that the trial court violated his due process rights when it denied him a "meaningful opportunity" to raise effective objections to the magistrate's decision, as required by Civ.R. 53(E)(3)(b). We find Donald's first and second assignments of error to be without merit.
It is well settled that a trial court is granted broad discretion to control its own docket. State v. Unger (1981),67 Ohio St.2d 65, 67-68. The Ohio Supreme Court in Unger set forth the following guidelines for granting a continuance:
 In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Id. This court has observed that "[t]he denial of a continuance must be considered along with the need for the efficient and effective administration of justice. A request for a continuance cannot be used as a vehicle to frustrate the orderly administration of justice." State v. Crebs
(1987), 42 Ohio App.3d 50, 51-52. Thus, a trial court's denial of a continuance is reviewed under an abuse of discretion standard. Id., at 51, citing Unger,67 Ohio St.2d at 67. An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable or unconscionable. SeeCrebs, 42 Ohio App.3d at 51. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138.
During the course of the divorce proceedings, Donald secured three different attorneys. His first counsel served for approximately eighteen months and filed a motion to withdraw as counsel only three weeks before the scheduled trial date. The trial court granted Donald several continuances, delaying the trial for two months in order for Donald's second counsel to become familiar with the case.
That counsel served for approximately eight months, attending both hearings before the magistrate, and filing timely objections to the magistrate's decision. When he filed the objections on October 7, 1998, Donald's counsel also requested that the hearing on the objections be held no earlier than six weeks hence, because the court reporter needed five weeks to compile transcripts of the two hearings. The trial court obliged, and scheduled the hearing for December 10, 1998.
On November 12, 1998, Donald secured new counsel. On November 24, Donald's new counsel filed a notice of appearance. The next day, counsel filed a motion for an extension of time in which to file amended objections, until January 11, 1999. In support of this motion, counsel averred that the court reporter had informed him she would not be able to issue the transcripts until December 1, 1998. No reason was given for the additional delay in issuing the transcripts of the hearings held on May 28 and June 19. Sally filed a brief in opposition to Donald's request for an extension, suggesting that Donald was employing a delaying tactic, and that the transcripts were not forthcoming earlier because Donald had not paid for them. The trial court did grant Donald an extension until December 10 in which to file amended objections, and the court postponed the hearing on the objections until December 17. Donald's counsel did not receive a copy of that extension until December 7, and filed another motion for a continuance. The trial court denied the second continuance.
In its decision denying Donald's request for an additional continuance, the trial court reviewed the factors outlined inUnger, supra. The court noted that the litigation had been ongoing for two years. The court outlined the delays that had already occurred in the case, mostly due to Donald's change in counsel. Sally had alleged that this request was merely a delaying tactic on Donald's part. In his motion for the continuance, Donald offered no reason why the change of counsel was important to his case, why it took so long to secure new counsel after the issuance of the magistrate's decision, why new counsel did not file an immediate notice of appearance, given the time constraints, or why there was such a delay in obtaining transcripts of hearings held six and five months earlier. Clearly the trial court questioned Donald's motives in securing new counsel and requesting this continuance.
Given the circumstances of this case, this court cannot say that the trial court abused its discretion when it granted Donald a limited extension in which to file and argue amended objections to the magistrate's decision. Donald's first and second assignments of error are overruled.
 B. Property Division and Denial of Spousal Support III. THE TRIAL COURT ERRED IN ITS FINAL JUDGMENT ENTRY OF DECEMBER 30, 1998, IN NOT PROVIDING A SUFFICIENT BASIS OR RATIONALE FOR ITS REFUSAL TO AWARD THE APPELLANT SPOUSAL SUPPORT AND TO RESERVE JURISDICTION TO MODIFY SUCH AN ORDER.
 IV. THE TRIAL COURT ERRED IN ITS FINAL JUDGMENT ENTRY OF DECEMBER 30, 1998 BY NOT PROVIDING SUFFICIENT FINDINGS IN SUPPORT OF ITS DIVISION OF THE PARTIES' PROPERTY, INCLUDING SUPPORT FOR THE VALUATION THEREOF.
 V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO AWARD THE APPELLANT ANY SPOUSAL SUPPORT AND IN FAILING TO RESERVE JURISDICTION TO MODIFY SUCH AN ORDER.
Donald's third, fourth, and fifth assignments of error challenge (1) the sufficiency of the judgment entry to provide the rationale for the trial court's division of property and its denial of spousal support, and (2) the trial court's denial of spousal support.
As to the first issue, Donald cites the Ohio Supreme Court decision in Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, which stated that "[i]n allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." Id., at paragraph two of the syllabus.
In the instant case, the trial court, in its order, adopted the magistrate's findings of fact. Thus, the documents may be read in tandem to understand the rationale for the court's determination as to the allocation of property and its denial of spousal support. We find that the magistrate's findings of fact and the trial court's order which adopted them provide a sufficient basis for a review of the trial court's decision.
As to the property division, the magistrate established the valuation of the parties' various assets and the debts attached thereto, and then recommended a division of property. The trial court adopted the recommended division of property. Each of the magistrate's statements of valuation and debt is easily followed, and each valuation is fully supported by the weight of the evidence. Although Sally was awarded the marital residence, that residence is heavily encumbered with debt. It goes without saying that the trial court appropriately awarded the marital residence to the residential parent of the minor children. The court awarded Sally her pension plan, which was valued at approximately $10,000. The trial court awarded Donald his two vehicles and his construction tools. Furthermore, the trial court ordered Sally to pay Donald an additional sum of $15,210.63, to compensate him for the difference in property valuation. This amount is due ninety days after Donald pays the balance of the tax liability. The trial court's statement of the basis for its property division is clear and well supported.
The only valuation that Donald specifically questions on appeal is the valuation of the numerous tools which he owned and used primarily for his construction business, and which he had removed from the marital property. Donald never proffered any reasonable estimate of the value of these tools. In her decision, the magistrate stated that these tools have a market value of $10,000. The magistrate apparently derived this figure from Donald's own testimony at the magistrate's hearing. Sally's attorney questioned Donald at length regarding the value of his tools. Donald's initial proposed value of the tools was $500, but he later stated he didn't know their value. Donald continued to vacillate about the value. Sally's counsel asked Donald if he would sell counsel the whole lot of the tools for $500, and Donald said he would not. Finally, Donald admitted that he would take $10,000 for the tools. Donald, who was in the best position to proffer evidence as to the valuation of these tools, failed to do so, other than his statement that he would sell the tools for $10,000.
The magistrate's statement that the tools had a fair market value of $10,000 is sufficiently clear to be reviewed on appeal. An appellate review of a division of marital property is limited to a determination of whether the trial court abused its discretion, that is, whether the trial court's decision was arbitrary, unreasonable, or unconscionable. Schaaf v. Schaaf (Dec. 24, 1997), Medina App. No. 2652-M, unreported, at 4. Upon review, we cannot say that the trial court abused its discretion in its division of property. We overrule Donald's fourth assignment of error.
Next we examine the trial court's judgment to see if it meets the Kaechele requirements that it (1) provide a clear basis for the denial of spousal support, and (2) consider all the factors relevant to spousal support, as required by R.C. 3105.18.Kaechele, 35 Ohio St.3d at paragraphs one and two of the syllabus.
R.C. 3105.18 lists the following factors to be considered in determining whether to award spousal support:
 The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
The relative earning abilities of the parties;
 The ages and the physical, mental, and emotional conditions of the parties;
The retirement benefits of the parties;
The duration of the marriage;
 The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 The standard of living of the parties established during the marriage;
The relative extent of education of the parties;
 The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 The tax consequences, for each party, of an award of spousal support;
 The lost income production capacity of either party that resulted from that party's marital responsibilities;
 Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1).
The trial court adopted the magistrate's findings of fact. The magistrate made the following findings relative to the statutorily enumerated factors: (a) Sally earns $38,147 per year, and Donald is capable of earning $19,760, based on his hourly wage at forty hours per week; (b) Donald will likely earn more money once he establishes his subcontractor business; (c) both parties are healthy and able to work full-time; (d) neither party has any substantial retirement funds; (e) the marriage was one of long duration; (f) Sally will be designated the custodial parent of the minor children, but will be able to work full-time outside the home; (g) the parties had a middle class income, and struggled to make ends meet; (h) Donald has more education than Sally but both are skilled in their fields; (i) the court will assign to Sally most of the couple's debts, except for the tax liability; (j) neither party contributed to the other's education; (k) neither party needs further education or training to become self-sufficient; and (m) neither party lost income because of his or her marital responsibilities.
Furthermore, the magistrate's findings of fact include several factors that militate against awarding Donald spousal support. Donald was voluntarily unemployed from 1991 to 1997, solely for the purpose of avoiding IRS garnishment of his wages. Although Donald was assigned the burden of paying approximately ninety percent of the tax liability, the magistrate found that Donald was primarily responsible for incurring this enormous debt. This finding was supported by clear and convincing evidence, including Donald's admission that he forged Sally's signature IRS forms, and actively kept from Sally information regarding tax matters.
The trial court's judgment, and the magistrate's findings of fact that the trial court judgment incorporated by reference, provide a basis for the court's denial of spousal support that is sufficient for our review. Donald's third assignment of error is overruled.
The trial court has broad discretion in determining whether to award spousal support. Vanderpool v. Vanderpool (1997),118 Ohio App.3d 876, 879, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. This court concludes that the trial court acted within its sound discretion in refusing to award spousal support.
Donald points to no evidence in the record that his economic position might decline in the future, such that the trial court should reserve jurisdiction on the issue of spousal support. Thus, we conclude that the trial court did not abuse its discretion in failing to retain jurisdiction to modify its order. Donald's fifth assignment of error is overruled.
Tax Liability Allocation
 VII. THE TRIAL COURT ERRED IN ALLOCATING TO THE APPELLANT LIABILITY FOR SUBSTANTIALLY ALL OF THE PARTIES' FEDERAL INCOME TAX DEBT.
The trial court allocated to Donald liability for all but $7,538.62 of the couple's $69,195.47 tax liability. A review of the following facts, in evidence before the trial court, will assist in clarifying whether the trial court's allocation was appropriate.
In 1981, Donald's brother James convinced Donald that he and Sally should invest in two ventures that would yield considerable investment tax credits to offset the couple's federal tax liability. However, the IRS began to scrutinize such tax shelters, including the two at issue here, to determine whether these investment vehicles were legitimate investments or merely a means of avoiding federal tax liability. On November 1, 1984, the IRS notified Donald and Sally that the agency was investigating one of the two ventures they had invested in, with possible tax consequences for the 1981 tax year. The IRS soon determined that the couple's investment vehicles were illegitimate tax shelters, and on May 23, 1988, the IRS notified Sally and Donald that they owed taxes, penalties, and interest for 1978, 1979, 1980, and 1981, totaling $15,170.58. This notice, a so-called "ninety day" letter, gave them ninety days to either pay the tax bill or file a petition in tax court.[2]
Donald admitted that he actively prevented Sally from learning about the tax issues and the implications of the IRS determinations. Donald deferred to James, who filed a petition in tax court on behalf of Donald and Sally. Sally and Donald paid no money on the tax assessment. As the extensive litigation continued in tax court over a course of nine years, penalties and interest accrued against Donald and Sally. James challenged both the tax assessment and the special penalties imposed on Donald and Sally for taxpayer negligence. The latter issue had been resolved against taxpayers in a 1988 case involving similar facts, but James pursued the litigation on behalf of Donald and Sally nonetheless. By 1991, tax courts nationally had determined that similar tax shelters were not legitimate, the tax court in Cleveland had disallowed Donald and Sally's tax shelters, and the tax court determined that Sally and Donald were negligent in relying on the advice of James and another investing partner. On March 3, 1997, the IRS issued a Notice of Levy to Sally's employer, Parma Community Hospital, stating that the amount due was $69,195.47, with interest computed through March 15, 1997.
Sally testified that she understood very little about the tax dispute, and when she asked Donald about the issues, he assured her that James was knowledgeable and would properly handle the matter. According to Sally, Donald refused to give her notices pertaining to the tax matters or to discuss these matters with her. Sally admitted that she filed no tax returns for a number of years. Donald admitted that he filed certain tax documents by forging Sally's signature. Despite her doubts about these matters, Sally executed a power of attorney so that James could represent the couple before the IRS.
Frustrated by her inability to get any information from either Donald or James, Sally finally hired a tax attorney in 1996. The attorney advised her that she may have been able to assert an "innocent spouse" defense early in the tax litigation process, since she had little understanding of the tax shelters or of the penalty and interest implications if the shelters were disallowed. Unfortunately, the tax attorney was of the opinion that it was probably too late for Sally to assert such a defense.
Now Donald claims that under the principle of res judicata, the domestic relations court was precluded from assigning to him a disproportionate burden of the tax liability. He argues that the court's allocation was based on a determination that Sally was an "innocent spouse," a defense which Sally could have raised, but did not raise before the tax court. For the reasons outlined below, we find that this assertion is without merit.
First, a domestic relations court has the authority to make an equitable distribution of the parties' assets and liabilities. See Schaaf v. Schaaf (Dec. 24, 1997), Medina App. No. 2652-M, unreported, at 3-4, citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131-132. The trial court has broad discretion when fashioning such an allocation of marital property. Holcomb,44 Ohio St.3d at 131, citing Berish v. Berish (1982), 69 Ohio St.2d 318,319. An unequal division of property is appropriate where one party has engaged in financial mismanagement. Schaaf, Medina App. No. 2652-M, unreported, at 5, fn. 2, citing R.C.3105.171(E)(3), Huener v. Huener (1996), 110 Ohio App.3d 322, 326, and DiLacqua v. DiLacqua (1993), 88 Ohio App.3d 48, 62.
Furthermore, it is not clear that the trial court found that Sally was an "innocent spouse." Indeed, when the couple was first notified that the subject tax shelters were disallowed, a notification that Donald hid from Sally, the amount due and owning was $15,170.58, plus some interest. The trial court's allocation of the tax liability to Sally amounts to approximately half of that figure.[3] It appears that the trial court attempted to put Sally in a position status quo ante, namely, the position she would have been in had Donald properly advised her in 1988 that the IRS had disallowed the tax shelters. Had Sally known in 1988 that substantial penalties and interest would result from a failure to pay the tax assessment, she may well have decided to pay the tax bill. She should not be obliged to pay ten years of interest on the tax and the penalties, when that interest resulted solely from Donald's fraudulent behavior. Of the original tax and penalties due at the time of the ninety day letter on May 23, 1988, it appears that the trial court assigned to Sally one-half of the tax liability.
Even assuming that the trial court's decision was based on an "innocent spouse" determination, res judicata bars further litigation only after a final judgment rendered upon the merits between the parties. See Grava v. Parkman Twp. Bd. of Trustees
(1995), 73 Ohio St.3d 379, 381. Furthermore, res judicata does not apply where there was fraud or collusion in the prior litigation. See Norwood v. McDonald (1943), 142 Ohio St. 299, paragraph one of the syllabus, overruled, in part on other grounds by Grava, 73 Ohio St.3d at syllabus. Thus, Donald's argument fails because (1) res judicata bars Sally only from asserting an innocent spouse defense against the IRS, and (2) there is substantial evidence that Donald engaged in fraud that prevented Sally from timely asserting the "innocent spouse" defense in the underlying litigation.
For the reasons outlined above, this court finds that the trial court was not barred by res judicata in allocating to Donald ninety percent of the couple's tax liability. We further find that the trial court acted within its sound discretion when it made such an allocation. Donald's seventh assignment of error is overruled.
D. No Record of In Camera Interviews
 VI. THE TRIAL COURT ERRED IN FAILING TO PROVIDE A SUFFICIENT RECORD OF THE IN CAMERA INTERVIEWS WITH THE PARTIES' MINOR CHILDREN.
Donald asserts that the trial court erred in failing to make a record of the in camera interviews that the magistrate conducted with the couple's two minor children, who were sixteen and fourteen years old at the time. Donald claims that the limited visitation rights that the court granted him may have been based in part on the in camera interviews. With no record of the interview, review of the trial court's decision is difficult.
This court has already held that a trial court need only record such in camera interviews when a party has timely requested such a record. Bowman v. Bowman (Mar. 19, 1997), Medina App. No. 2574-M, unreported, at 6-7, citing Patton v. Patton (1993),87 Ohio App.3d 844, 846. Donald does not assert that he made a timely request for such a record.
During the course of the May 28, 1998 magistrate's hearing, Donald's attorney announced after a break that during the morning there had been in camera interviews with the two daughters. The magistrate added that the record should reflect that "the Magistrate interviewed the parties' two minor daughters * * *. Then afterward there was a discussion with counsel about the general substance of * * * those interviews." Nowhere in the record did Donald request a record of the interviews or object to the procedure. "A party who fails to bring an alleged error to the attention of the trial court at a time when the error may be corrected waives the error on appeal." Pawlus v. Bartrug (1996),109 Ohio App.3d 796, 801, citing LeFort v. Century 21-MaitlandRealty Co. (1987), 32 Ohio St.3d 121, 123.
Because Donald failed to request that the court make a record of the in camera interview, we find that Donald's sixth assignment of error is not well-taken and we overrule it.
 E. Recital of the Magistrate's Decision VIII. THE TRIAL COURT ERRED IN ENTERING A FINAL JUDGMENT ENTRY WHICH CONTAINED A RECITAL OF THE MAGISTRATE'S DECISION IN VIOLATION OF RULE 54(A) OF THE OHIO RULES OF CIVIL PROCEDURE.
Donald objects to the trial court's order, which adopted the magistrate's decision. He asserts that the court's decision contained a "recital" of the magistrate's decision, in violation of the Civ.R.54(A). Donald has not asserted how he was prejudiced by the mere fact of this recital.
In support of his assignment of error, Donald cites Wellbornv. K-Beck Furn. Mart, Inc. (1977), 54 Ohio App.2d 65. However,Wellborn dealt with a situation in which the trial court "approved" the recommended judgment made by the magistrate (then known as a "referee"), but did not reduce that recommendation to a judgment by the trial court. The Wellborn court concluded, "merely stating that the referee's report is approved does not constitute a judgment." Id. at 66. While that court went on to say that a "judgment shall not even contain the report of the referee," the Wellborn decision clearly emphasized that the trial court, even if approving a magistrate/referee's decision, must make its own order. That is exactly what happened in the instant case. The trial court below did recite sections of the magistrate's decision, but it issued its own order. Therefore, Donald's eighth assignment of error is not well-taken, and we overrule it.
 III.
Having overruled all of Donald's assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
SLABY, J., MAHONEY, J., CONCUR
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] The couple's oldest child had reached the age of majority by this time.
[2] Parties filing such an appeal may elect to pay the taxes and receive a refund if the tax court rules in their favor, or forego the payment of the taxes, pending the outcome of the litigation. In the second scenario, if the tax court rules against them, they will be liable not only for the tax assessment and any penalties that may be imposed, but also for the interest that has accrued during the pendency of the litigation.
[3] The $15,170.58 figure represents taxes, penalties and interest for 1978, 1979, 1980 and 1981. One penalty was applied to 1981, in the amount of $93.35. The trial court apparently assigned this amount to Donald, and then divided the remaining balance ($15,077.23) equally between Sally and Donald.