[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 50 
The parties to this action, Kathleen M. DiLacqua and John T. DiLacqua, were married for fourteen years. They are the parents of three children whose ages, at the time of the hearing below, were twelve, nine and six. The parties were granted a divorce by the Summit County Domestic Relations Court on April 3, 1992. Mr. DiLacqua appealed from the decision of the trial court and has argued six assignments of error. Ms. DiLacqua has cross-appealed and has argued three assignments of error.
Mr. DiLacqua's assignments of error are that the trial court abused its discretion by: (1) including a certain bonus he received from his employer in its calculation of his temporary child support obligation; (2) setting the amount of his temporary child support obligation unreasonably high; (3) directing him to pay Ms. DiLacqua spousal support of $1,500 per month for a period of four years, commencing when the marital home is sold; (4) directing him to pay Ms. DiLacqua spousal support of $2,000 per month until the marital home is sold; (5) directing that the first $13,150 of the net proceeds from the sale of the marital home be paid to Ms. DiLacqua because of his alleged financial misconduct; and (6) directing him to pay $5,000 of Ms. DiLacqua's attorney fees. Ms. DiLacqua's cross-assignments of error are that the trial court abused its discretion by: (1) attempting to cure Mr. DiLacqua's alleged financial misconduct by directing that the first $13,150 of the net proceeds from the sale of the marital home be paid to her; (2) directing that a psychologist who, pursuant to an agreement of the parties, did psychological evaluations of the family members be paid with proceeds from the sale of the marital home; and (3) directing that a landscaper who did certain work at the marital home be paid with proceeds from the sale of the home. The trial court did abuse its discretion in regard to the spousal support it ordered in this case and, accordingly, Mr. DiLacqua's third and fourth assignments of error are well taken. The trial court also abused its discretion by attempting to cure Mr. DiLacqua's alleged financial misconduct by directing that the first $13,150 of the net proceeds from the sale of the marital home be paid to Ms. DiLacqua and, accordingly, Ms. DiLacqua's first cross-assignment of error is well taken. In all other regards, the decision of the trial court shall be affirmed.
 I. FACTUAL BACKGROUND
Ms. DiLacqua filed this action on October 2, 1990. At that time Mr. DiLacqua was employed by TRW, Inc. and Ms. DiLacqua was not employed outside the home. Mr. DiLacqua's annual gross income with TRW was $80,000 plus a bonus. *Page 52 
On November 30, 1990, a referee for the trial court filed a report that, among other things, recommended that temporary custody of the couple's three children be with Ms. DiLacqua and that Mr. DiLacqua be directed to pay $520 per month per child in temporary child support and $530 per month as temporary spousal support. The referee's report recommended that Mr. DiLacqua should pay "mortgage if possible and other bills if able." It also provided that "[i]f [Mr. DiLacqua] receives bonus in '91 the same is to be escrowed distributed as follows: make up mortgage payments, if deficient, balance 50% to [Ms. DiLacqua] — 50% to [Mr. DiLacqua] for atty fees." On December 28, 1990, the trial court filed a judgment entry that incorporated the referee's recommendations for temporary custody, child support and spousal support. That judgment entry, however, did not include any provision related to payment of the mortgage on the marital home, payment of other bills or distribution of any bonus that Mr. DiLacqua might receive.
In early December 1990, defendant began working for a new employer, Luria Brothers. His annual salary in his new position was $110,000 plus an automobile allowance of $6,300 per year. In addition, when he began his new position, he received a $20,000 bonus on condition that he would reimburse his new employer up to that amount from any bonus he received from his previous employer, TRW. On December 28, 1990, Ms. DiLacqua moved the trial court for additional temporary orders based upon changed circumstances. The referee filed a report on February 27, 1991 in which he recommended that temporary child support be increased to $704 per child. Also, after noting that mortgage on the marital home was "about to be foreclosed," the referee recommended that the bonus money Mr. DiLacqua had received from his new employer be used to bring the mortgage up to date and that he be directed to make future payments on the mortgage as they became due. The referee further recommended that any balance of the bonus be escrowed with one of the parties' attorneys, "pending further order of the court."
Mr. DiLacqua filed a number of objections to the referee's report. On April 1, 1991, the trial court entered a finding overruling those objections. On April 29, 1991, the trial court entered an order that, in part, changed the temporary child support to $704 per month per child, directed that the mortgage be brought current through the use of the bonus and that Mr. DiLacqua pay the mortgage payments, "effective as of February 6, 1991, or the first month thereafter following the bringing of the mortgage up to date * * *." The court also directed that any balance from the bonus be escrowed as the referee had recommended. Funds from the bonus were used to pay the mortgage through April 1991. The balance of the bonus, however, was divided by the parties, with each receiving $2,643.97. *Page 53 
Mr. DiLacqua failed to make any further mortgage payments. On January 15, 1992, the trial court found him in contempt and, among other things, directed him to liquidate certain Individual Retirement Accounts to again bring the mortgage current to avoid another threatened foreclosure. This time the bank that held the mortgage initially refused to accept the past due payments. On March 11, 1992, the trial court entered another order that directed Mr. DiLacqua to cash all available liquid assets and bring the mortgage current through March 1992, in order to stop the foreclosure. The court at that time also reduced the amount of temporary child support, apparently because of a reduction in Mr. DiLacqua's income, and increased the amount of temporary spousal support to $2,000 per month. It further directed that, commencing in April 1992, Ms. DiLacqua would be responsible for making the monthly mortgage payments.
This matter was tried before the trial court on August 15, 1991, and March 3, 4 and 11, 1992. The court filed its final entry on April 3, 1992. Among other things, the court awarded custody of the children to Ms. DiLacqua and directed Mr. DiLacqua to pay child support of $1,794 per month. It also ordered Mr. DiLacqua to pay spousal support of $2,000 per month until such time as the marital home is sold and $1,500 per month thereafter for a period of four years. The court found that Mr. DiLacqua had engaged in financial misconduct by failing to pay the mortgage payments as they became due and directed that, when the home is sold, Ms. DiLacqua "will receive the first $13,150 from the net proceeds." Ms. DiLacqua and the couple's three children resided in the marital home from the time this action was commenced and continued to do so at the time of oral argument before this court.
 II. DISCUSSION
As noted at the outset, Mr. DiLacqua has appealed to this court, assigning six errors, and Ms. DiLacqua has cross-appealed, assigning three errors. Mr. DiLacqua's fifth assignment of error and Ms. DiLacqua's first cross-assignment of error both deal with the same issue and, therefore, will be discussed together. Each of the other assigned errors will be discussed separately.
 A. MR. DiLACQUA'S FIRST ASSIGNMENT OF ERROR
Mr. DiLacqua's first assignment of error is that the trial court abused its discretion by including the $20,000 bonus payment he received from his employer in the calculation of his temporary child support obligation in light of the fact that most of the bonus was used to make mortgage payments on the marital home and the balance was divided equally between the parties. As mentioned previously, Mr. DiLacqua received the bonus payment at issue at the time he started his employment with Luria Brothers in late 1990. He agreed at the time he received *Page 54 
the bonus that he would reimburse Luria to the extent that he received a bonus from his previous employer, TRW. He subsequently did receive a payment from TRW and turned it over to Luria.
The trial court initially directed Mr. DiLacqua to pay temporary child support of $520 per month per child based upon his TRW annual salary of $80,000 plus an anticipated bonus of $13,000. After he changed employers, the trial court recalculated his temporary child support obligation and increased it to $704 per month per child. In determining the amount of appropriate temporary child support to recommend, the referee in the trial court found that Mr. DiLacqua's income with Luria was $136,300:
"In computing Defendant's income, his base salary will be $110,000.00 per year. He gets a $6,300.00 car allowance and he has received a $20,000.00 bonus, making his base income $136,300.00 for 1991."
The referee then proceeded to recommend that Mr. DiLacqua be required to use the bonus payment to bring the mortgage on the marital home current. The trial court adopted the referee's recommendations, the bonus was used to bring the mortgage current, and the remaining balance was divided between the parties.
Mr. DiLacqua's argument in support of his first assignment of error is that the bonus payment should not have been included in the calculation of his temporary child support obligation because, by ordering it to be used to make mortgage payments, the court treated it as "marital property" rather than as "income to him." We do not find, however, that the trial court abused its discretion by the manner in which it treated the bonus payment.
R.C. 3105.18 provides that, during the pendency of a divorce proceeding, a court may award reasonable spousal support to either party. A purpose of such an award is to preserve the status quo during the proceeding. See Kahn v. Kahn (1987),42 Ohio App.3d 61, 68, 536 N.E.2d 678, 685. One legitimate way of preserving the status quo is to ensure that mortgage payments continue to be made on a marital home. The trial court in this case, at least initially, chose to ensure that mortgage payments be paid by directing Mr. DiLacqua to bring them current through the use of marital income in the form of the bonus payment he had received. Viewed properly, the trial court's direction to Mr. DiLacqua to use the bonus money to bring the mortgage payments on the marital home up to date was not, as he has suggested, treatment of the bonus as "marital property" any more than other spousal support payments made from marital income during the pendency of a divorce action are "marital property." The trial court could have, as it subsequently did, directed Mr. DiLacqua to make higher payments of spousal support directly to Ms. DiLacqua (through the child support enforcement *Page 55 
agency) with a stipulation that she be responsible for keeping the mortgage payments current. Either way, the funds at issue were part of Mr. DiLacqua's obligation to pay temporary spousal support. See Kahn v. Kahn, supra, 42 Ohio App.3d at 67,536 N.E.2d at 684.
Mr. DiLacqua, however, has pointed to a statement in the referee's recommendation of August 14, 1991, adopted by the trial court, which, he argues, evidences that the trial court treated the payment of the mortgage obligation as a distribution of marital property:
"Defendant's argument that he should be given credit for monies paid to Plaintiff on the bonus will not work. The referee clearly ordered that part of the bonus, not used to bring the mortgage up to date to be escrowed pending further order of the Court. The distribution of this fund is clearly in the nature of a property division."
Mr. DiLacqua has misinterpreted the trial court's statement. The argument that Mr. DiLacqua had made, and to which the referee referred in the above-quoted language, was that he should receive credit against arrearages he then owed for child and spousal support for the $2,643.97 that he had previously paid Ms. DiLacqua out of the balance of the bonus that remained after the mortgage payments had been made:
"Defendant says that after he used part of the bonus monies to bring the mortgage up to date he gave one-half (1/2) of the balance to Plaintiff. He believes he should receive a credit against arrearages for the money which he gave to Plaintiff. The amount was $2,643.97."
A judgment entry filed by the trial court on December 28, 1990, however, had provided, in part, that all payments made by Mr. DiLacqua to Ms. DiLacqua pursuant to his support obligation were to be made through the child support enforcement agency and that any payment not made in that manner, "shall not be considered as a payment of support and shall be deemed a gift." Accordingly, it was not the source of the money Mr. DiLacqua paid directly to Ms. DiLacqua that led to the payment being treated as a "property division" by the trial court, but rather the manner in which it had been paid. Mr. DiLacqua disregarded both the trial court's direction that the balance of the bonus be held in escrow and its direction that payments of support to Ms. DiLacqua be made through the child support enforcement agency. His disregard of those directions in his use of the balance of the bonus did not change the nature of his obligation to make the mortgage payments.
The $20,000 bonus, the $110,000 salary, and the $6,300 car allowance received by Mr. DiLacqua were all marital income. The use of part of the bonus to fulfill that part of his temporary support obligation that consisted of making mortgage *Page 56 
payments on the marital home did not change the bonus payment into something other than marital income. Accordingly, the trial court did not abuse its discretion by including the bonus payment as part of the DiLacqua's marital income in calculating Mr. DiLacqua's temporary child support obligation. Mr. DiLacqua's first assignment of error is overruled.
 B. MR. DiLACQUA'S SECOND ASSIGNMENT OF ERROR
Mr. DiLacqua's second assignment of error is that the trial court abused its discretion by setting the amount of his temporary support obligation unreasonably high. Specifically, he has argued that he was required to pay "eighty-five percent (85%) of his monthly net income for support." Ms. DiLacqua has argued that this assignment of error is not properly before us because of the interlocutory nature of temporary support orders:
"This issue is being raised as a result of temporary orders ordered by the Referee on April 29, 1991. Temporary orders are interlocutory and therefore are non-appealable."
Accordingly, we must first consider whether this assignment of error is properly before us.
It is true that temporary support orders are interlocutory. They are different from most interlocutory orders because they require an immediate payment by the party against whom they are entered. That difference has led to questions regarding the effect of entry of a final judgment upon a party's failure to fulfill prior temporary support obligations as they became due. A party to a divorce proceeding loses the opportunity to receive a judgment based upon the adverse party's failure to make ordered temporary support payments if the arrearages are not reduced to a separate judgment before a final decree is entered in the proceeding and that final decree does not make reference to those arrearages. As held by the Ohio Supreme Court inColom v. Colom (1979), 58 Ohio St.2d 245, 247, 12 O.O.3d 242, 243, 389 N.E.2d 856, 858:
"[N]ot only should the interim orders be merged within the final judgment, but the right of action or enforcement of such interim orders should not be extended beyond the final decree unless specifically reduced to judgment or referred to within the decree."
The rationale for this rule is found in the nature of a final divorce decree. The purpose of such a decree is to disentangle the relationship between the parties and, unless the decree specifically provides otherwise, it is assumed that in accomplishing that disentanglement, the trial court has properly considered everything that has occurred prior to and during the pendency of the divorce proceeding, including any failure of one of the parties to fulfill temporary support *Page 57 
obligations. This rule regarding the treatment of a party's failure to comply with temporary support obligations, however, does not affect the nature of the underlying orders from which those obligations arise. Those orders remain interlocutory orders to which the same rules apply that are applicable to other interlocutory orders.
Interlocutory orders are not "non-appealable" as Ms. DiLacqua has suggested; rather, they are not immediately appealable:
"Since they are not final orders, as defined in R.C. 2505.02, interlocutory orders are not appealable under R.C. 2505.03. This does not mean that they are not appealable at all — claimed prejudicial error with respect to an interlocutory order may be reviewed on appeal after a judgment, decree, or final order is entered in the case in which the interlocutory order was entered." Whiteside, Ohio Appellate Practice (1991) 34-35. SeeBalson v. Dodds (1980), 62 Ohio St.2d 287, 289, 16 O.O.3d 329, 330, 405 N.E.2d 293, 295; Bobko v. Sagen (1989), 61 Ohio App.3d 397,412, 572 N.E.2d 823, 832.
If a temporary support order that was truly an abuse of the trial court's discretion, either because it awarded too much or too little temporary support, were not reviewable following entry of the final judgment, the party prejudiced by that abuse of discretion would have no opportunity to attempt to have that prejudice remedied. Temporary support orders, like other interlocutory orders, are reviewable after entry of a final decree disposing of the action in which they were entered. Accordingly, Mr. DiLacqua's second assignment of error is properly before us.
Mr. DiLacqua's assertion that the temporary support he was required to pay equaled eighty-five percent of his net income was based upon inclusion of the mortgage payments that he was directed to pay in his calculation of temporary support, but omission of the bonus he received from the calculation of his income. As has already been discussed, the bonus was properly included in the calculation of his income for purposes of his temporary child support obligation. As mentioned previously, a legitimate purpose of temporary support orders is maintenance of the status quo during the pendency of divorce proceedings. The orders entered by the trial court in this case were in furtherance of that purpose. We do not find that the trial court abused its discretion in setting the amounts that Mr. DiLacqua was directed to pay as temporary support. Mr. DiLacqua's second assignment of error is overruled.
 C. MR. DiLACQUA'S THIRD ASSIGNMENT OF ERROR
Mr. DiLacqua's third assignment of error is that the trial court abused its discretion in awarding Ms. DiLacqua, as part of its final entry, spousal support of *Page 58 
$1,500 per month for four years. Specifically, Mr. DiLacqua has argued that, in arriving at the amount of spousal support Ms. DiLacqua should receive, the trial court failed to consider that she "has the ability to earn $32-$34,000 per year."
Ms. DiLacqua graduated from Villanova University with a Bachelor of Science Degree in nursing in 1977. She became a licensed registered nurse and worked in that field full-time for the first two years of the parties' marriage while Mr. DiLacqua obtained an MBA degree from Carnegie Mellon University. Ms. DiLacqua worked part-time as a nurse thereafter through the summer of 1985, shortly before the birth of the couple's third child. At trial, Ms. DiLacqua testified that she would like to return to school to study toward a degree in pharmacy. She testified that in order to receive such a degree, she would be required to take one year of full-time prerequisite work and then attend pharmacy school full-time for three additional years. She testified that the hours she would be required to work as a pharmacist would be "better" than those she would be required to work as a nurse. Although she acknowledged that she had the ability to become a licensed nurse within Ohio by taking a ten-week refresher course at a cost of $800 and that she would then have the ability to earn between $32,000 and $34,000 per year, there was no evidence regarding the amount of income she could hope to achieve if she completed pharmacy school or regarding the availability of employment in that field.
There was evidence that the couple's two older children have attention deficit with hyperactivity disorder. Dr. Dawn Lord, a psychologist who testified at trial, stated that their disorder is "managed," however, through, among other things, their taking Ritalin during the school year. She further indicated that they require more "parenting" because of the disorder.
The trial court's final order included the following regarding Ms. DiLacqua's plans:
"It is Wife's plan to move to Columbus, Ohio, where she can complete a degree in Pharmacy at the Ohio State University. She submitted documentation about this program, as well as information that the Ohio State University Pharmacy Program is the closest to the Hudson/Cleveland locality. If it does not conflict with the children's school and extracurricular activities, she has plans to work part time as a nurse while pursuing her degree.
"The Court finds that a move to Columbus, plus having three young children, two sons with attention deficit behavior disorder, will prevent Wife from pursuing a full time career. However, the Court finds it possible that she could go to school and work part time."
Subsequently in its entry, at the point at which the trial court calculated the amount of spousal support Ms. DiLacqua would be awarded, it stated: *Page 59 
"This Court has taken into consideration the fact that Wife has the ability to earn at least $12,000 a year working part time to meet the expenses of herself and the children."
The trial court then calculated the amount Ms. DiLacqua should receive as $18,000 per year.
A number of factors that are to be considered in determining whether spousal support is appropriate and, if so, the amount and duration of that support, are listed in R.C. 3105.18(C)(1). Included among those factors are the following:
"(b) The relative earning abilities of the parties;
"* * *
"(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"* * *
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought[.]"
It does not appear that the trial court's award of spousal support to Ms. DiLacqua was based upon a conclusion that it was inappropriate for her to seek employment outside the home because of her role as custodian of the couple's children. As mentioned previously, the two older children's attention deficit hyperactivity disorder is "managed." All three of the children are school age and the trial court concluded that it would be possible for Ms. DiLacqua to be away from the home to attend school full-time and to work part-time. The award of spousal support, therefore, must have been based on other factors.
Even after Mr. DiLacqua's annual income was reduced to $110,800 on February 1, 1992, his earning ability far exceeded Ms. DiLacqua's of between $32,000 and $34,000 per year as a registered nurse. Further, Mr. DiLacqua was able to obtain an advanced degree, with Ms. DiLacqua's assistance, during their marriage. These are factors that would weigh in favor of providing Ms. DiLacqua spousal support in an amount, and for a period of time, that would allow her to acquire education that would enable her to "obtain appropriate employment." Appropriate employment would allow Ms. DiLacqua to contribute more to maintaining the standard of living that the family had established during the *Page 60 
marriage. Those factors, however, could not have served as a basis for the trial court's award of spousal support in this case.
As mentioned previously, there was no evidence regarding the amount of income Ms. DiLacqua could hope to achieve if she completed a pharmacy program or the availability of positions in that field. Without that information, the trial court could not appropriately conclude that spousal support in an amount and for a period sufficient to enable Ms. DiLacqua to complete a pharmacy program was proper to enable her to "obtain appropriate employment" because there was no evidence before the court from which it could have concluded that employment in the pharmacy field would either be appropriate for Ms. DiLacqua (in view of her qualifications in the nursing field) or would be available to her.
An award of spousal support should not be vacated as an abuse of discretion unless it was "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. In this case, based on the lack of support in the record for the award made by the trial court, we find that award to have been "arbitrary." Accordingly, the trial court's award of spousal support of $1,500 per month for four years shall be vacated and this matter will be remanded to the trial court for determination of whether spousal support is appropriate and, if so, the proper amount and duration of that spousal support.
 D. MR. DiLACQUA'S FOURTH ASSIGNMENT OF ERROR
Mr. DiLacqua's fourth assignment of error is that the trial court abused its discretion by directing that he pay Ms. DiLacqua $2,000 per month spousal support until such time as the marital home is sold. As discussed above, the trial court directed Mr. DiLacqua to pay spousal support of $1,500 a month for a period of four years. That four-year period, however, was not to commence until such time as the marital home was sold. The combination of these two orders by the trial court resulted in a provision of spousal support for an indefinite time: four years plus whatever period it took for the parties to sell the marital home. Mr. DiLacqua has charged that Ms. DiLacqua has refused to cooperate in the sale of the marital home in order to extend the period of time for which she will receive spousal support. Although there is no evidence from which it could be concluded that Ms. DiLacqua has in fact done as Mr. DiLacqua has charged, the indefinite nature of the trial court's order invites abuse. Accordingly, that part of the trial court's final decree that provided for spousal support in the amount of $2,000 per month during the period between the entry of the final decree and the date upon which the marital home is sold was an abuse of discretion and will be vacated. As stated previously, this matter will be remanded to the trial court for *Page 61 
determination whether an award of spousal support is appropriate and, if so, the proper amount and duration of that award.
 E. MR. DiLACQUA'S SIXTH ASSIGNMENT OF ERROR
Mr. DiLacqua's sixth assignment of error is that the trial court abused its discretion by directing that he pay Ms. DiLacqua $5,000 toward her attorney fees. Specifically, he has argued that the trial court failed to consider the relative assets of the parties in making such award. We do not find that the trial court's award of attorney fees to Ms. DiLacqua was unreasonable, arbitrary or unconscionable. Accordingly, Mr. DiLacqua's sixth assignment of error is overruled.
 F. MR. DiLACQUA'S FIFTH ASSIGNMENT OF ERROR AND MS. DiLACQUA'S FIRST CROSS-ASSIGNMENT OF ERROR
Mr. DiLacqua's fifth assignment of error and Ms. DiLacqua's first cross-assignment of error both relate to the trial court's order that the first $13,150 in net proceeds from the sale of the marital home should be paid to Ms. DiLacqua because of Mr. DiLacqua's financial misconduct. Mr. DiLacqua has argued that the court's order was an abuse of discretion because he had not actually engaged in financial misconduct. Ms. DiLacqua, on the other hand, has argued that the court's order was an abuse of discretion because it did not fully compensate her for Mr. DiLacqua's financial misconduct.
R.C. 3105.171(E)(3) provides:
"If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
As was discussed previously, as part of his temporary support obligation in this case, Mr. DiLacqua was ordered to bring the mortgage payments on the marital home current through the use of the $20,000 bonus he received and to then pay the payments as they became due. After he brought the mortgage current, however, he failed to make the monthly payments as they became due. On March 11, 1992, therefore, the trial court ordered Mr. DiLacqua to "cash in all liquid assets and bring the mortgage current through March, 1992, and stop the pending foreclosure action on the marital dwelling." Pursuant to that order, he liquidated marital assets worth $26,300 and used the proceeds to pay on the mortgage. In its final decree, the trial court found as follows:
"This Court finds that there were sufficient funds to make the house payments, as well as to meet the expenses of both these parties. The Court finds Husband *Page 62 
engaged in willful financial misconduct when he failed to make the house payments. Therefore, the Court finds that it is only equitable that Wife receive $13,150, which is one half of the marital assets which were liquidated to prevent the home from being sold at a Sheriff's sale."
It further directed that: "When the home is sold, Wife shall receive the first $13,150 from the net proceeds."
Mr. DiLacqua has argued that the trial court abused its discretion in directing that Ms. DiLacqua receive the first $13,150 in net proceeds from the sale of the house because, according to him, the original order directing him to make the house payments as they became due was an abuse of discretion. We have already reviewed that order, however, and found that it was not an abuse of discretion. Mr. DiLacqua's fifth assignment of error, therefore, will be overruled.
Ms. DiLacqua has argued that the trial court's direction that she receive the first $13,150 in net proceeds from the sale of the house was an abuse of discretion because it did not fully compensate her for Mr. DiLacqua's financial misconduct. We agree.
The net proceeds from the sale of the house will be marital property. As a result, the trial court directed that any amounts remaining from the sale of the house after Ms. DiLacqua received the first $13,150, and after certain other matters were paid, were to be divided equally between the parties. Assuming that there will be sufficient proceeds from the sale of the house so that there will be funds to divide between the parties after payment of the items the trial court directed be paid from the proceeds, in the absence of the court's order that Ms. DiLacqua receive the first $13,150 in proceeds, she would receive half that same amount simply as part of the division of marital property. That is, although the trial court apparently sought to penalize Mr. DiLacqua $13,150, one-half the value of the marital assets that were lost through his misconduct, the order it entered only actually penalized him $6,575. To fully compensate Ms. DiLacqua for Mr. DiLacqua's financial misconduct, the trial court should have directed that, when the house is sold, Dr. Lord, the Guardian ad litem, and Green World Landscaping should be paid from the net proceeds and that the remaining net proceeds from the house, plus the proceeds from other marital assets, should be divided equally. The full amount of one-half of those proceeds, plus $13,150 of the other half of the proceeds, should be distributed to Ms. DiLacqua. The remainder of the proceeds should be distributed to Mr. DiLacqua. Accordingly, Ms. DiLacqua's first cross-assignment of error shall be sustained and, upon remand, the trial court shall enter an order in conformity with this decision. *Page 63 
 G. MS. DiLACQUA'S SECOND CROSS-ASSIGNMENT OF ERROR
Ms. DiLacqua's second cross-assignment of error is that the trial court abused its discretion by providing that Dr. Lord would be paid with proceeds from the sale of the marital home. Dr. Lord was retained by agreement of the parties and it was not an abuse of discretion for the trial court to direct that she be paid out of marital assets. Ms. DiLacqua's second cross-assignment of error is overruled.
 H. MS. DiLACQUA'S THIRD CROSS-ASSIGNMENT OF ERROR
Ms. DiLacqua's final cross-assignment of error is that it was an abuse of discretion for the trial court to direct that Green World Landscaping be paid with proceeds from the sale of the marital home. The amount owed Green World Landscaping was for work done at the marital home. We do not find that the trial court abused its discretion in directing that it be paid with proceeds from the sale of that home. Ms. DiLacqua's third assignment of error is overruled.
 III. CONCLUSION
Mr. DiLacqua's first, second, fifth and sixth assignments of error and Ms. DiLacqua's second and third cross-assignments of error are overruled. Mr. DiLacqua's third and fourth assignments of error and Ms. DiLacqua's first cross-assignment of error are sustained. This matter is remanded for further proceedings consistent with this opinion.
Judgment accordingly.
BAIRD, P.J., and REECE, J., concur.