JOURNAL ENTRY AND OPINION
Plaintiff-appellant Leanza Ford appeals from the award of spousal support made to the defendant-appellee Lana Ford by the Cuyahoga County Court of Common Pleas, Domestic Relations Division.
The record reveals that when the appellant filed for divorce on May 27, 1998, there were no minor children. The parties agreed to all aspects of the divorce save for spousal support and this issue was tried before a magistrate. The parties entered the following stipulations, which were ultimately attached to the magistrate's findings of fact and conclusions of law:
 1. The parties have previously divided their household furnishings and each shall retain those items in his or her possession.
 2. Each will retain the cars titled in his or her name.
3. Each will retain bank accounts in his or her name.
4. Wife will retain her Valic Account[s] * * *.
 5. Husband is a participant in the Ohio Public Employees Deferred Compensation Program which has a present value of * * *. Wife had entered into the attachment agreement to divide the marital portion of this Program.
 6. Husband is presently a participant in PERS and has retirement benefits with a present value of * * *, all of which is marital.
 Husband and Wife have entered into the attached agreement to divide the marital portion of Huband's PERS.
 7. Wife acknowledges that she has no rights to the True Faith Apostolic Bibleway Church and the real estate of said Church.[1]
 8. Each party is responsible for debts in his or her own name.
 9. Husband is responsible for and holds Wife harmless on the Bank One Cognovit Judgment with the approximate balance of $38,146.42.
At the hearing, after some initial discussion, counsel for the appellee stated on the record at the hearing that All property issues and debts have been resolved by the stipulations. (T. 9). The magistrate responded, Have been resolved, all right. Thank you. (T. 9).
Mr. Ford testified that he has been employed at the Cleveland Hopkins International Airport as a heavy duty diesel mechanic for 23 years. His income statement indicated that at the time of the hearing he earned $16.54 per hour. Mr. Ford stated that he has worked overtime in the past, but that he was given oral notification from his supervisor the previous week that overtime would no longer be available. His pay stub indicated that as of May 12, 1999, he had earned $23,724, year to date. Mr. Ford testified that last year his income was $36,000, including overtime. For a short period of time, from September to November, 1998, Mr. Ford held a second job earning $10.00 per hour.
Mr. Ford testified that Ms. Ford was employed by Templum House and held another related position for which she earned a combined total of approximately $32,000 in 1998. Ms. Ford accepted the second position in order to pay off her debts. Mr. Ford stated that when he became aware of some of the debts in 1997 he assisted her with $5000 in payments, which represented the total amount of the debt as he knew it (T. 19-20). The appellant later learned that there were debts of which he had no knowledge and that the debt he thought had been paid off had in fact grown larger (T. 20).
Mr. Ford testified that during the marriage they did not pay rent, but rather resided at the parish house of the True Faith Apostolic Church, where Mr. Ford is the minister. Mr. Ford continued to reside in the parish house and, although he does not pay a mortgage or rent, he is responsible for the utilities (electric, water, gas) and he has voluntarily undertaken to make the insurance payments ($246) on behalf of the church. Mr. Ford also contributes $400 a month to the church and to charities. Mr. Ford receives no income from the church. He testified that his total expenses are $2,305 per month (T. 23).
Ms. Ford testified that for over a year she has lived with Mr. Ford's brother and sister-in-law. She pays $350 per month, but sometimes has to pay more if there are additional expenses. Ms. Ford has been employed by Templum House for ten years and her gross salary in 1998 was $22,769.08. For the past three years she has held a part-time position with the Center for Prevention of Domestic Violence and earned approximately $8000 in 1998. She works 40 hours per week at Templum House and between 12 and 30 hours a week at the Center. Ms. Ford undertook the part-time position in order to pay her debts and hopes to only need the position for another two years. She testified that these were debts she incurred (T. 36). She also testified that most of the debts were unknown to Mr. Ford (T. 37).
On direct examination, Ms. Ford testified that she intends to move and estimates that her rent will be $500. Ms. Ford has recently been diagnosed with high blood pressure and the doctor advised her to reduce her work hours. Ms. Ford estimated that her debt is approximately $18,000 and that she obtained a loan on her retirement in order to repair her automobile. Ms. Ford testified that she incurred her other debt to support her daughter and her grandchildren. Mr. and Ms. Ford are the legal guardians for the grandchildren and it was largely for the support of the grandchildren that she incurred the debt. Ms. Ford does not know whether or not Mr. Ford knew she was accumulating debt to help her daughter (T. 41). Ms. Ford testified that the grandchildren are seven and eight years old; that the Fords were the guardians since their birth; that the children lived with the Fords until 1996 or 1997; that the Fords continue to have legal custody of the children; and that she assists financially whenever she is able. Ms. Ford testified that much of the debt was incurred after the children moved out, but stated that the children were ill. She also admitted that the children now live with their parents, who are both employed full time.
The magistrate issued findings of fact and conclusions of law. The magistrate found that the appellant's base pay, without overtime, was $34,403.20 per year ($16.54 x 40 x 52). The magistrate found that in the first 19 weeks of the year, the appellant has earned $23,724.02 and that, without overtime, for the remaining 33 weeks his income would be $21,832.80 (33 x 40 x $16.54), which would bring his total income for the year to $45,556.82.
The magistrate determined that the absence of an expense for a mortgage or rent is a significant benefit to the appellant and is properly considered along with his earnings in the determination of spousal support. The magistrate estimated that the benefit was worth $400 a month or $4,800 a year.
The magistrate found the standard of living of the parties was moderate and that education was not a factor. The magistrate then found:
 Both parties have debts and each has agreed to be responsible for the debts in his or her own name. [Appellee] lists debts of about $19,000.00; [appellant] lists debts (exclusive of his car loan) totaling $11,000.00. Both parties testified regarding the debts but no documentary evidence was presented. [Appellant] testified that in 1997 he learned that [appellee] had about $5,000.00 of debt and began to help [appellee] with the payments. He is aware that more debts were incurred after that time but stated he had no knowledge of how much and for what purpose [appellee] incurred further debt. [Appellee] did not challenge the $11,000.00 of debt claimed by [appellant].
 There was no evidence presented which would warrant the conclusion that the debts were incurred for other than legitimate marital purposes. [Appellee] testified that a good portion of it was incurred for the parties' daughter who, along with her husband and two (2) children of whom [appellant] and [appellee] are legal guardians, lived with and were supported by [appellant] and [appellee] until 1996 or 1997. Absent evidence of financial misconduct in the incurring of the debt, the monthly payments required of each party to retire the debt are legitimate expenses.
The magistrate further found that it would be unfair to ascribe to the appellant an income based on a 40-hour work week and at the same time ascribe to the appellee income based upon a 60-hour work week. The magistrate stated that if appellant did not want his overtime to be considered, he cannot insist that the Court consider [appellee's] income from her part-time job. The magistrate continued:
 At a minimum, [appellant's] income, including the value of the rent free residence is $39,203.00 ($34,403.00 + $4,800.00) and [appellee's] income is $22,679.00 with the difference being $16,524.00. If both parties' actual incomes, including second jobs and overtime were to be considered, [appellant's] income from employment would be $40,778.00 (averaging of his projected 1999 income of $45,556.00 and his 1998 $45,578.00 of $36,000.00) plus the housing benefit of $4,800.00 for a total income of $45,578.00. [Appellee's] total income would be about $30,679.00. The difference between them would be $14,899.00. Under either scenario, the difference in their incomes is in the range of $15,000.00.
Regarding the appellee's expenses, the magistrate found:
 The single biggest item in [appellee's] budget is the debt service. Nearly $15,000.00 of the debt is represented in four credit cards; Sears, Mastercard, Speigel and Discover on which [appellee] appears to be making only minimum monthly payments at present. She testified she would like to pay off the debt in five (5) years. The Magistrate finds that, assuming interest rates of between 13% — 18% for these debts, and according to loan amortization tables she would have to pay between $341.00 and $381.00 per month to discharge the debt within that period of time.
 This brings her minimum monthly expenses to at least $2,200.00.
The magistrate found the biggest difference in the parties' budgets to be the monthly sum allocated for such things as entertainment and contributions, for which the appellant was about $500.00 and for the appellee $200.00. The magistrate stated that Clearly, [appellant] has more discretion in the allocation of his income than does the [appellee].
In summation, the magistrate found that an award of spousal support would be equitable and should be granted. The magistrate stated that an award which leaves the parties with similar amounts of disposable income would be just and reasonable and awarded the appellee $550.00 per month as spousal support.
The appellant filed objections to the magistrate's report, which were overruled by the court. Judgment was entered by the court as recommended by the magistrate.
The appellant sets forth the following five assignments of error all contesting the award of spousal support made by the trial court:
 TRIAL COURT ERRED WHEN IT CONSIDERED APPELLANT'S RENT FREE ARRANGEMENT WITH THE CHURCH AS INCOME.
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN IT OVERSTATED HIS INCOME TO INCLUDE OVERTIME THAT WAS NOT AVAILABLE.
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN IT FAILED TO CONSIDER APPELLEE'S INCOME FROM HER PART-TIME JOB.
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN IT REFUSED TO FOLLOW THE STIPULATIONS AGREED TO BY THE PARTIES.
 THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN IT PROJECTED EXPENSES TO APPELLEE WHICH WERE NOT IN EVIDENCE.
The appellant asserts in each of these assignments of error that the trial court erred in its award of spousal support. Specifically, the appellant argues that the court erred in imputing income to him in the amount of rent; erred in failing to consider that he no longer has overtime pay; erred in failing to consider the appellee's second job; erred by redistributing the income such that he has no disposable income at all; erred in awarding spousal support where the income of the parties is similar; erred when it projected expenses which were not in evidence; and, erred in failing to accept the stipulations of the parties to each bear their own debts.
In general, when reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard has always been applied. Booth v. Booth (1989), 44 Ohio St.3d 142. The Supreme Court has recently noted that the discretionary authority vested in the trial court applies when determining an award for spousal support. Berthelot v. Dezso, Judge(1999), 86 Ohio St.3d 257. However, the trial court's award of spousal support may be found to be arbitrary based on the lack of support in the record for the award. Dilacqua v. Dilacqua (1993), 88 Ohio App.3d 48, 60. McEaneney, v. McEaneney (Feb. 2, 2000), Summit App. No. 19555, unreported. In Rose v. Rose (March 31, 1997), Franklin App. Nos. 96APF09-1150, 96APF11-1550, unreported, the appellate court found that a trial court is not required to accept an offered stipulation.
The following list of factors to be used by the trial court when determining an award of spousal support is provided in R.C. 3105.18:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 (2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
In the case sub judice, the trial court adequately addressed each element of the statute in the magistrate's report. And although the appellant would like the law to be otherwise, the trial court was not bound to accept the stipulation that each party would bear its own debts. Thus, the court properly considered the appellee's debt during the hearing regarding the award of spousal support. Additionally, this court notes that the trial court considered the appellee's part-time position when allocating spousal support. Indeed, the court found the disparity in income to be greater when not considering both the appellant's overtime and the appellee's second job ($16,524.00 versus $14,899.00). The appellant's second, third and fourth assignments of error are overruled. The fifth assignment of error must be overruled as the appellant failed to specify in the record the expenses to which he was alluding.
The appellant's first assignment of error warrants separate consideration. The standard of review regarding the imputation of income is also one of abuse of discretion. See Congrove v. Congrove (Sept. 20, 2000) Summit App. No. 19890, unreported, where the court held:
 A review of the factors contained in R.C. 3105.18(C) reveals no requirement obligating a trial court to impute income to a party.
 Rather, when contemplating a spousal support award, R.C. 3105.18(C) requires that a trial court consider, among other things, the income of the parties and the relative earning abilities of the parties. R.C. 3105(C)(1)(a) and (b); see, also, Petrusch v. Petrusch (Mar. 7, 1997), Montgomery App. No. 15960, unreported, 1997 Ohio App. LEXIS 823, at *9-10. Like an award of spousal support, itself, the imposition and amount of potential income to be imputed are matters to be determined by the trial court based upon the facts and circumstances of each case." Bertoldi v. Bertoldi (Oct. 8, 1997), 1997 Ohio App. LEXIS 4526, *12, Summit App. No. 18346, unreported, at 3.
Here, the trial court imputed $400.00 a month to the appellant as income in lieu of rent that he did not have to pay for his residence at the parish house. While the appellant derives no paycheck from the church, in essence, the trial court found that the church made an in-kind contribution to the appellant in the amount of rent he would have had to have paid elsewhere. The court did not err in imputing income to the appellant in the sum of $4,800 per year.
The appellant's first assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________________ JAMES D. SWEENEY, JUDGE
DIANE KARPINSKI, A.J., and JAMES J. SWEENEY, J., CONCUR.
[1] Paragraphs 7 and 9 were typed, crossed out, and then handwritten on the bottom of the document. The parties re-signed the document after the handwritten portion. The handwritten stipulations have been placed above into the main body of the stipulations for purposes of this opinion.