JOURNAL ENTRY AND OPINION
Plaintiff-appellant Ginger Stallings (wife; d.o.b. June 13, 1951) appeals from the trial court's determination of (1) the amount and duration of spousal support and (2) the May 4, 1996, termination date for the marriage. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the wife and defendant-appellee James Stallings (husband; d.o.b. October 22, 1952) were married in Charlotte, North Carolina on August 7, 1971. The parties have one child from that marriage, namely, David Stallings (d.o.b. July 30, 1978), who became emancipated on his birthday in 1996. Wife is a high school graduate who attended approximately two years of college in an accounting major prior to the marriage. During the pendency of the marriage the parties moved a number of times to accommodate the husband's career in retail sales management, sometimes with the same company and sometimes to move to a different company. The parties settled in Solon, Ohio, in 1992.
Husband was terminated from his northern-Ohio employer in late-1995. By wife's own concession, the parties have lived separate and apart since May 4, 1996, leaving wife in possession of the marital home and all its contents. Tr. 169. After approximately 25 years of marriage, and 6 weeks prior to the child becoming emancipated, and 1 day following her 45th birthday, wife filed for divorce on June 14, 1996, alleging adultery, gross neglect of duty, extreme cruelty, and irreconcilable differences. Also filed by wife on June 14, 1996, was a motion for temporary alimony pendente lite.[1] On February 4, 1997, on the husband's motions for emergency sale of (1) the marital home located at 6576 Woodbury Lane, Solon, Ohio, and (2) a 1993 Jeep Cherokee automobile (titled in the husband's name, but which was in the possession of the wife[2]), the trial court ordered that these two items be sold. The equity remaining from the marital home sale ($49,164.09) was placed in a joint escrow account at a local title company. The equity from the sale of the automobile (approximately $6,000) was spent to send the parties' son to attend The Ohio State University. The trial court entered a temporary spousal support order of $600 per month commencing on March 31, 1997. Husband filed a motion on September 18, 1997, to modify spousal support.
On October 17, 1997, in the U.S. Bankruptcy Court, Western District of North Carolina, Charlotte Division, husband filed for Chapter 7 bankruptcy. Husband was granted a discharge in bankruptcy on January 17, 1998.
On July 30, 1998, wife filed a motion to increase the amount of temporary spousal support.
A three-day trial was conducted before a Magistrate commencing on June 30, 1999.[3] The Magistrate issued his decision on November 30, 1999.[4] As part of this decision, the Magistrate found the following: (1) that there was a temporary spousal support arrearage by the husband in the amount of $6,298.24, which formed the basis for modifying the temporary spousal support to reflect $700 per month effective July 14, 1999 (the date of the Magistrate's hearing); (2) that the marriage terminated on the date of separation (May 4, 1996) in light of the parties living independently from one another since that time and because there was no active attempt by either party at reconciliation; (3) that the 1996 Chevrolet Corsica is the wife's separate property; (4) the 1993 Jeep was sold for approximately $6,000 and the proceeds were used to send the parties' son to college; (5) the parties marital assets include the house sale escrow account ($49,164) and husband's profit sharing plan ($6,052); (6) [T]he parties had significant marital debts (see Plaintiff's Exhibits 1 and 2). They are being discharged in Bankruptcy Court by the Defendant.
(Magistrate's decision at 4);[5] (7) a number of debts, totaling approximately $21,673, are held jointly by the parties, including, ATT MasterCard ($1,790), Buddy's Carpet ($2,800), Discover Card ($2,941), Key Bank ($5,139), Nations Bank VISA ($5,391), and Wachovia Bank ($3,612); (8) the wife's gross income in 1998, from all sources, was $39,741 (which includes $7,080 in temporary spousal support); (9) the husband's gross income in 1998 was $82,700; (10) the wife's earning ability is less than the husband's; (11) neither party suffers from any unusual physical, mental or emotional condition; (12) apart from anticipated social security benefits and profit sharing, neither party has a retirement or pension plan; (13) the parties standard of living was comfortable, as reflected over the recent years for which there were tax returns admitted into evidence;[6] (14) neither party sought education or specific training to be qualified for other employment; (15) the wife lost income production capacity due to the parties having moved frequently during the marriage; (16) the wife has approximately $3,000 in monthly expenses and does not have sufficient income to meet those expenses; (17) the husband presented no evidence at the Magistrate's hearing as to his monthly expenses; (18) that husband pay wife $700 monthly for a period of 50 months as spousal support; (19) that husband pay wife a lump sum award of $9,500 from the husband's share of the escrow account in additional spousal support toward the joint debts; (20) that the wife had $21,000 in reasonable attorney fees, that wife will not have the financial ability to pay those fees following a division of the marital assets and an award of spousal support, and husband has the financial ability to contribute to the payment of those fees; (21) that spousal support would be taxable income to the recipient and a deduction to the payor; (22) that each party contributed equally to the production of the marital assets and income. The Magistrate recommended the following property award:
 TO WIFE 50% of the profit sharing plan. 50% of the home sale escrow account.
 TO HUSBAND 50% of the profit sharing plan. 50% of the home sale escrow account as of the date of division subject to the wife's interest in temporary support arrears and attorney fees herein.
Next, the Magistrate recommended the following in pertinent part:
 1. Husband hold wife harmless for any debts or charges he has incurred since the date of separation and which have not been discharged in bankruptcy;
 2. Husband, as necessary sustenance for the wife, pay and hold wife harmless on $9,500 of joint debt;
 3. That the trial court retain jurisdiction to award further spousal support to the aggrieved party in the event that either party discharge in bankruptcy an obligation of spousal support;
 4. From husband's 50% interest in the escrow account, wife receive a lump sum award of $6,298.24 to satisfy the temporary support order and judgment. Further, that wife shall receive a lump sum judgment for any additional temporary support arrears accruing after trial, and the temporary support order be increased to $700 per month effective July 14, 1999;
 5. From the husband's 50% share of the escrow amount, wife to receive the sum of $9,000 to satisfy the judgment in her favor for attorneys fees;
 6. From the husband's 50% share of the escrow amount, wife to receive the lump sum award of $9,500 to satisfy the lump sum spousal support due by husband to wife for his share of the joint debts;
 7. Each party be awarded those household goods and furnishings in their possession;
 8. Husband to pay wife the sum of $9,000 as additional spousal support toward attorney fees, for which judgment is rendered;
 9. Husband and wife to equally pay the costs of the proceeding; and,
 10. Husband pay wife spousal support in the amount of $700 per month, plus poundage, for a period of 50 months from the date of the divorce decree.
Thereafter, wife filed objections on December 17, 1999 and supplemental objections on February 4, 2000 to this Magistrate's decision. Husband filed his brief in opposition to these objections on February 16, 2000.
On March 14, 2000, the Bankruptcy Court in North Carolina ordered that the funds in the escrow account from the sale of the marital home be turned over to the Trustee in Bankruptcy and that those funds be then disbursed to the joint creditors of James and Ginger Stallings as found by the trial court's Magistrate at page 4 of his November 30, 1999 decision. See wife's motion for new trial, at attached exhibit. Thus, the escrow account funds were to be disbursed to the parties joint accounts, with an approximate indebtedness of $21,673; the joint account debt which was eliminated by the bankruptcy court order include ATT MasterCard ($1,790), Buddy's Carpet ($2,800), Discover Card ($2,941), Key Bank ($5,139), Nations Bank VISA ($5,391), and Wachovia Bank ($3,612). Thus, the only debt following the bankruptcy action was debt incurred by the parties individually after the termination of the marriage; marital debts were eliminated.
On May 22, 2000, wife filed a motion for a new trial, which was denied on October 25, 2000.
On June 29, 2000, the trial court overruled the wife's objections to the Magistrate's decision and approved the substance of that decision as the judgment of the court. See Journal Vol. 3603, pages 239-247. Wife filed her notice of appeal on July 31, 2000, from the June 29, 2000 judgment entry of divorce.
In this appeal, wife presents two assignments of error for review. The first assignment of error provides the following:
 I THE TRIAL COURT ERRED IN AWARDING GINGER STALLINGS A SMALL AMOUNT OF SPOUSAL SUPPORT FOR A BRIEF, FIXED PERIOD OF TIME, IN SPITE OF THE EVIDENCE THAT WAS PRESENTED AT TRIAL, WHICH INDICATED A LONG-TERM MARRIAGE AND A GREAT DISPARITY IN THE EARNING ABILITIES OF THE PARTIES.
In its judgment entry of divorce, see Journal Vol. 3603, pages 241-242, the trial court awarded the wife spousal support through a separate wage order on husband's employer[7] in the amount of $714 per month ($700 plus 2% poundage) for a period of fifty (50) months commencing on the journalization date of the divorce decree (June 29, 2000).[8] Wife argues that the trial court erred in determining the amount and duration of spousal support pursuant to the factors contained in R.C. 3105.18(C).
The standard of review for an award of spousal support was recently stated by this court in Ford v. Ford (Mar. 15, 2001), Cuyahoga App. No. 77417, unreported, 2001 Ohio App. LEXIS 1161, at 11-14:
 In general, when reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard has always been applied. Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028. The Supreme Court has recently noted that the discretionary authority vested in the trial court applies when determining an award for spousal support. Berthelot v. Dezso, Judge (1999), 86 Ohio St.3d 257, 714 N.E.2d 888. However, the trial court's award of spousal support may be found to be arbitrary based on the lack of support in the record for the award. Dilacqua v. Dilacqua (1993), 88 Ohio App.3d 48, 60, 623 N.E.2d 118. McEaneney v. McEaneney (Feb. 2, 2000), Summit App. No. 19555, unreported. In Rose v. Rose, 1997 Ohio App. LEXIS 1235 (March 31, 1997), Franklin App. Nos. 96APF09-1150, 96APF11-1550, unreported, the appellate court found that a trial court is not required to accept an offered stipulation.
 The following list of factors to be used by the trial court when determining an award of spousal support is provided in R.C. 3105.18:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171
[3105.17.1] of the Revised Code;(b) The relative earning abilities of the parties;(c) The ages and the physical, mental, and emotional conditions of the parties;(d) The retirement benefits of the parties; (e) The duration of the marriage;(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;(g) The standard of living of the parties established during the marriage;(h) The relative extent of education of the parties;(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;(l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;(n) Any other factor that the court expressly finds to be relevant and equitable.(2)In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
We also recognize that whether the parties' standard of living has been altered as a result of the divorce, or whether the parties will no longer enjoy a similar standard of living as that previously enjoyed during the term of the marriage, is not dispositive of the equitableness of a spousal support award. See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93.
As for the issue surrounding the 50-month post-decree duration of the spousal support, we note that this court has previously determined that 24 months of $200 per month spousal support was reasonable in a divorce involving a 15-year marriage where the wife had imputed annual income of $10,000 and the husband had annual income of $39,000, a 4:1 disparity ratio in incomes. See Savioli v. Savioli (Feb. 15, 1996), Cuyahoga App. No. 69043, unreported, 1996 WL 65854. In the present case, the disparity of incomes between the parties is approximately 2:1 (with husband earning approximately $83,000 annually, and the wife earning approximately $39,000 annually, according to their 1998 tax returns) and the length of the Stallings' marriage is less than double that of the marriage in Savioli. As noted by the Magistrate, neither of the parties herein experience any serious health or mental problems, and neither party sought money to help pay for training or education for skill development which would then be used in seeking better-paying employment.The earnings history of the middle-aged, partially college-educated wife herein suggests, as the trial court recognized when making its award of spousal support, that her earning ability has increased, and will likely increase, over time and that she was fully capable of being self-supporting with meaningful employment outside the home. The trial court looked at the factors in R.C. 3105.18(C), the totality of the evidence, the total award, and concluded that a definite termination date for spousal support, rather than the indefinite duration as sought by the wife, was reasonable and equitable. See Kunkle v. Kunkle (1990), 51 Ohio St.3d 64 (an indefinite term of spousal support is reasonable in divorces involving a marriage of long duration, parties of advanced age, or a spouse who has little opportunity or ability to develop meaningful employment outside the home which would give that spouse the potential of being self-supporting).
Appellant cites to several cases involving marriages of long duration, each between 22 to 28 years of marriage, as support for an indefinite award of spousal support herein. See Schneider v. Schneider (Geauga, 1996), 110 Ohio App.3d 487; Shaffer v. Shaffer (Crawford, 1996),109 Ohio App.3d 205; Vanke v. Vanke (Franklin, 1994), 93 Ohio App.3d 373; and Corpac v. Corpac (Feb. 27, 1992), Franklin App. No. 91AP-1036, unreported, 1992 WL 41244. These four cases are easily distinguished from the present case because each of the female spouses in those cases cited by appellant were awarded indefinite spousal support based on the fact that: (1) they had a large disparity of income as compared to their husbands (none of them coming close to the disparity ratio at issue herein); and (2) the wives' income potential was very limited which did not permit them the opportunity of being self-supporting outside the home. Such is not the case with the former Mrs. Stallings.
Given the facts of this case, the trial court adequately addressed the relevant elements of R.C. 3105.18(C) and we cannot conclude that the trial court abused its discretion in the award of spousal support or the duration period for that support.
The first assignment of error is overruled.
The second assignment of error provides the following:
 II THE TRIAL COURT ERRED IN DETERMINING THAT THE PARTIES' MARRIAGE WAS TERMINATED BEFORE THE PARTIES EVER FILED FOR DIVORCE.
As previously indicated above, the trial court, using its equitable powers, determined that the parties' marriage ended on the date the parties' separated, to-wit, May 4, 1996. That the trial court used a date other than the date of the final hearing in the action for divorce to determine the valuation date of the marital assets is within the sound discretion of the trial court. Gullia v. Gullia (1994), 93 Ohio App.3d 653,666; R.C. 3105.171(A)(2)(b). In the present case, the evidence clearly indicated that the parties lived separate and apart after May 4, 1996; the wife testified precisely to this fact. Wife also testified that there was no cohabitation or living together as husband and wife following that date. After that date, the parties filed separate tax returns and kept their finances and affairs separate (except for court-ordered support payments by husband). The actions of the wife following that date also lend support for the trial court's use of May 4, 1996, as the termination date of the marriage. These actions include the wife's attempt to demean the husband and sabotage his career and credit history by sending misleading and/or inciteful communications to business associates (depicting husband as a dead beat dad and an adulterer who had an affair with a co-employee, in one instance using the husband's own letterhead stationery so as to lead the reader to believe that the husband was the author of the communication) and canceling husband's credit cards without his knowledge. See Defendant's Exhibits A, B-1, B-2, M. These actions do not portray a semblance of a marriage after the date of separation. We cannot conclude that the trial court abused its discretion in using May 4, 1996, as the de facto termination date for the parties' marriage. R.C. 3105.171(A)(2)(b).
The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
ANNE L. KILBANE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
 __________________________________ JAMES D. SWEENEY, PRESIDING JUDGE:
[1] Within this motion, wife averred that the monthly mortgage payment for the marital home was $1,827 and that she earned $25,300 annually. Also, wife averred that the marital home in Solon originally cost $254,000, was valued at $300,000, and had a mortgage balance of $195,000. See wife's pretrial statement and affidavit filed on October 25, 1996. The wife also claimed credit card debts totaling $73,000, and monthly household expenses totaling $7,325 (which includes the monthly mortgage payment and $1,000 per month for the son's college expenses/tuition). Id.
[2] At the time of the filing for divorce, husband leased a 1994 Chevrolet Corvette and a 1994 Ford Explorer. See wife's pretrial statement and affidavit filed October 25, 1996. The wife also identified a 19-foot 1986 Sea Ray boat and trailer valued at $6,000. Id. This boat was in her possession at the time of the divorce and the record suggests that the boat was subsequently sold and the proceeds distributed by the Trustee in Bankruptcy in North Carolina to the parties' joint creditors.
[3] Wife conceded that the debts listed in the bankruptcy petition totaled approximately $111,000. Tr. 8.
[4] At the time of this hearing, wife conceded that she lives in Hillsborough, North Carolina (a small city located approximately ten miles west of Durham, North Carolina), and appellee lives in Charlotte, North Carolina. Tr. 7.
[5] As testified to by the wife, the parties, either jointly or separately maintained a host of credit card accounts which are indicative, to some degree, of the parties' lifestyle. These accounts and their balances near the time of the parties' separation, see Tr. 60-68, include the following: (1) ATT MasterCard, $1,789.93; (2) American Express, $179.89; (3) Bank One Visa Travel Plan, $5,905.67; (4) Bank One MasterCard, $2,058.91; (5) Citibank MasterCard, $4,008.96; (6) Buddy's Carpet, $2,800; (7) Citibank Visa, $2,388.11; (8) Discover Card, $2,941; (9) Key Bank, $5,139.06; (10) MBNA MasterCard [first account], $5,275.69; (11) MBNA MasterCard [second account], $5,072.81; (12) Nations Bank Visa, $5,391.44; (13) American Express Optima, $6,268.68; (14) Sears, $3,222.76; (15) Chemical Bank MasterCard, $5,194.16; (16) Star Bank MasterCard, $8,610.74; (17) Sun Trust Bank, $3,131.39; and, (18) Wachovia Bank MasterCard, $3,611.55. The total amount of these pre-separation balances is $72,990.75. Wife maintained that this credit burden was incurred as a result of unreimbursed moving expenses, yet she provided no documentation as to those claimed unreimbursed expenses. Tr. 190-191. The wife, on cross-examination by husband's counsel, admitted that she forged her husband's signature on a number of applications for credit cards thereby opening them in his name only, cards which were then used by the wife for purchases, yet she claimed that despite the lack of an express authorization to sign husband's signature, that this practice was regularly done in the past in their household. See Tr. 205-219. Wife also negotiated a series of husband's unemployment checks issued after the date of separation, but which were mailed to the marital home, by forging his name to the back of the check, claiming that it was the practice in the household that she would regularly sign her husband's name to instruments without express authorization to do so by the husband. See Tr. 195-196.
[6] When filing jointly, the parties' gross annual income was the following: 1990 — $134,937; 1991 — $124,299; 1992 — $133,043; 1993 — $152,742; 1994 — $174,005; 1995 — $109,584. See Magistrate's decision at 6. Filing separate returns beginning in tax year 1996, wife testified that her income in 1996 was $262.77, in 1997 was $29,885 ($26,718 in wages, plus $3,167 in temporary spousal support), and in 1998 was $38,751 ($32,661 in wages, plus $7,080 in temporary spousal support). See Tr. 72-73; Plaintiff's Exhibits 9-11.
[7] Appellee's employer at the time of the divorce decree was Baby Superstore located in Duncan, South Carolina.
[8] Extra plated over the post-decree duration period of spousal support, the total amount of spousal support, plus poundage, is $35,700 (50 months x $714 per month = $35,700).